IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SKYWORKS, LTD., CEDARWOOD VILLAGE APARTMENTS I & II OWNER B, LLC; MONARCH INVESTMENT AND MANAGEMENT GROUP, LLC; TOLEDO PROPERTIES OWNER B, LLC; and NATIONAL ASSOCIATION OF HOME BUILDERS,<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>CENTERS FOR DISEASE CONTROL AND PREVENTION; ROCHELLE P. WALENSKY, in her official capacity as Director, Centers for Disease Control and Prevention; SHERRI A. BERGER, in her official capacity as Acting Chief of Staff, Centers for Disease Control and Prevention; DEPARTMENT OF HEALTH AND HUMAN SERVICES; NORRIS COCHRAN, in his official capacity as acting Secretary of Health and Human Services; MONTY WILKINSON, in his official capacity as Acting Attorney General of the United States,<br><br>　　　　　　Defendants. | Case No. 5:20-cv-02407-JPC<br><br>JUDGE J. PHILIP CALABRESE<br><br>MAGISTRATE JUDGE CARMEN E. HENDERSON |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO CLARIFY OR AMEND**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii
INTRODUCTION ..................................................................................................................... 2
ARGUMENT .............................................................................................................................. 5
    I.   Plaintiffs Have Met The Requirements of Rule 59(e) ..................................................... 5
    II.  Plaintiffs Have Standing to Seek Universal Vacatur ....................................................... 6
    III. The Court's Judgment Necessarily Vacated the Eviction Moratorium as to All Affected Parties, But the Court can Limit the Geographic Scope of Its Judgment ...................... 11
CONCLUSION ........................................................................................................................ 14
CERTIFICATE OF SERVICE ................................................................................................. 15

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alabama Association of Realtors, et. al, v. United States Department of Health and Human Services, et. al*,
No. 1:20-cv-03337-DLF (May 5, 2021) ................................................................. 3

*Banister v. Davis*,
140 S.Ct. 1698 (2020) ............................................................................................ 5

*Bender v. Williamsport Area School District*,
475 U.S. 534 (1986) ............................................................................................... 8

*Capital Area Immigrants' Rights Coal. v. Trump*,
471 F. Supp.3d 25 (D.D.C. 2020) ....................................................................... 12

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) ............................................................................................. 11

*City of Los Angeles, Calif. v. Patel*,
576 U.S. 409 (2015) ............................................................................................. 10

*Cook County Illinois v. Wolf*,
2020 WL 6393005 (N.D.Ill., Nov. 2, 2020) ......................................................... 12

*DHS v. Regents of the Univ. of Cal.*,
─── U.S. ───, 140 S. Ct. 1891, 207 L.Ed.2d 353 (2020) ................................... 7

*U.S. ex rel. Eagleye v. TRW, Inc.*,
947 F.2d 947 (6th Cir. 1991) ................................................................................. 2

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ............................................................................................. 11

*Foster v. DeLuca*,
545 F.3d 582 (7th Cir. 2008) ................................................................................. 6

*Gautreaux v. Chicago Hous. Auth.*,
178 F.3d 951 (7th Cir. 1999) ................................................................................. 6

*GenCorp, Inc. v. Am. Int'l Underwriters*,
178 F.3d 804 (6th Cir. 1999) ................................................................................. 6

*Gill v. Whitford*,
138 S. Ct. 1916 (2018) .................................................................................... 4, 11

*Gun Owners of Am., Inc. v. Garland*,
   992 F.3d 446 (6th Cir. 2021) ...............................................................................13

*H & H Tire Co. v. U.S. Dep't of Transp.*,
   471 F.2d 350 (7th Cir. 1972) .................................................................................7

*Hines v. Comm'r of Soc. Sec.*,
   414 F. Supp. 3d 1080 (S.D. Ohio 2019) ................................................................6

*Ill. Pub. Telecomms. Ass'n v. FCC*,
   123 F.3d 693 (D.C. Cir. 1997) ...............................................................................6

*Iowa League of Cities v. E.P.A.*,
   711 F.3d 844 (8th Cir. 2013) .................................................................................7

*Lewis v. Casey*,
   518 U.S. 343 (1996).......................................................................................8, 9, 10

*Louisiana Public Service Comm'n v. FCC*,
   476 U.S. 355 (1986)..............................................................................................10

*Lujan v. National Wildlife Federation*,
   497 U.S. 871 (1990)..............................................................................................12

*Mayor & City Council of Baltimore v. Azar*,
   No. 19- 1103, 2020 WL 1873947 (D. Md. Apr. 15, 2020)...................................14

*Missouri v. Jenkins*,
   515 U.S. 70 (1995)..................................................................................................8

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010)..............................................................................................12

*Morrow v. Harwell*,
   768 F.2d 619 (5th Cir. 1985) ...............................................................................13

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
   145 F.3d 1399 (D.C. Cir. 1998) ...................................................................3, 6, 12

*O.A. v. Trump*,
   404 F. Supp. 3d 109 (D.D.C. 2019) ..............................................................3, 6, 11

*Ohio v. Akron Ctr. for Reprod. Health*,
   497 U.S. 502 (1990)..............................................................................................10

*Powell v. McCormack*,
   395 U.S. 486 (1969)..............................................................................................12

*Rowe v. Reg.*,
    No. 1:07-CV-20, 2008 WL 2009186 (E.D. Tenn. May 8, 2008) ...............................5

*Singh Mgmt. Co., LLC v. Singh Dev. Co., Inc.*,
    774 Fed. App'x 921 (6th Cir. 2019) ...............................................................5, 6

*Spokeo v. Robins*,
    136 S. Ct. 1540, 1550 (2016) ...............................................................................11

*State of N. J., Dep't of Env't Prot. v. U.S. Env't Prot. Agency*,
    626 F.2d 1038 (D.C. Cir. 1980) ............................................................................7

*Tennessee Hosp. Ass'n v. Azar*,
    908 F.3d 1029 (6th Cir. 2018) ...............................................................................7

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
    137 S. Ct. 1645 (2017) ............................................................................................8

*U.S. Steel Corp. v. U.S. E.P.A.*,
    595 F.2d 207 (5th Cir. 1979) ..................................................................................7

*Empire Health Found. ex rel. Valley Hosp. Med. Ctr. v. Azar*,
    958 F.3d 873 (9th Cir. 2020) ..................................................................................6

**Rules**

Fed. Rule of App. Proc., Rule 4(a)(4)(B)(i) ......................................................................2

**Other Authorities**

Power and Discretion of Court, 11 Wright, A. Miller & M. Kane, Fed. Prac. &
    Proc. Civ. § 2803 (3d ed. 2012) .............................................................................5

**INTRODUCTION**

Plaintiffs' motion to clarify or amend raises two fundamental issues.[1] First, what is the effect of a judgement setting aside agency action under APA section 706 for lack of statutory authority? As Plaintiffs argued in their opening brief, the plain meaning of section 706 is that "set aside" means "vacate" and the effect of this Court's decision was necessarily to vacate the CDC's eviction moratorium at its source, rather than its destination. That is, by ruling that the CDC lacked the authority to promulgate the moratorium, this Court necessarily declared that the CDC lacked the authority to enforce the moratorium against any party, not just the Plaintiffs. Second, assuming Plaintiffs are correct, what is the proper geographic scope of the Court's judgment? Plaintiffs believe it is national, but as they argued in their motion, this Court possesses the discretion to limit the reach of its judgment to the Northern District of Ohio.

In response, Defendants conflate these two points and raise a host of irrelevant and straw man arguments. In an all-or-nothing gambit, they claim that the only two choices this Court faces are nationwide vacatur or invalidating the eviction moratorium only as to the Plaintiffs. Thus, Defendant's claim that "Plaintiffs' position would require district courts to enter nationwide relief by default whenever they find agency action unlawful." ECF #60 at 5. But Plaintiffs admitted in their opening brief not only that the Court has discretion to limit the geographic scope of its judgment, but that there are some circumstances in which it is appropriate to invalidate an agency action only as to certain parties. *See* ECF #58 at 5. This, however, is not such a case. Plaintiffs'

---

[1] Today, May 7, 2019, the Defendants appealed this Court's judgment to the Sixth Circuit. Plaintiffs are informed that Defendants intend to file a motion asking the Sixth Circuit to hold the appeal in abeyance until this Court resolves the pending motion to clarify. Plaintiffs have consented to this proposed motion. This Court retains jurisdiction to decide Plaintiff's motion to clarify. *See* Fed. Rule of App. Proc., Rule 4(a)(4)(B)(i) (providing that where there is a pending Rule 59 motion, a notice of appeal becomes effective "when the order disposing the last remaining such motion is entered."). *E.g., U.S. ex rel. Eagleye v. TRW, Inc.*, 947 F.2d 947 (6th Cir. 1991) (holding an appeal in abeyance pending resolution of a pending district court motion).

challenge is necessarily a facial challenge to the CDC's authority, and the "ordinary remedy" in such a case is to vacate the agency action as to all affected parties. Indeed, just two days ago, a district court in the District of Columbia held the CDC's moratorium unlawful under the statute and set it aside as to all affected parties rather than just the plaintiffs in the case. *See Alabama Association of Realtors, et. al, v. United States Department of Health and Human Services, et. al*, No. 1:20-cv-03337-DLF (May 5, 2021).[2] Defendants' claim that this is somehow a drastic or unorthodox remedy in APA cases is simply not true.

Defendants also spend a great deal of space in their brief arguing against nationwide injunctions—a point that is not at issue here. Plaintiffs have not asked this Court to reconsider its rejection of an injunction in this case, but to clarify that its declaration setting aside the moratorium applies, as it must naturally apply, to all affected parties, at least within the Northern District of Ohio. Defendants ignore the difference between an injunction—which courts have often considered to be a "drastic remedy"—and a declaratory judgment.

Consistent with their effort to avoid Plaintiffs' arguments, Defendants also claim that Rule 59(e) prevents the Court from issuing the requested relief, on the grounds that Plaintiffs cannot raise a new issue that they allegedly failed to raise before. But this is wrong for two reasons. First, Plaintiffs did make the point during the briefing on the preliminary injunction that universal

---

[2] The Court in *Alabama Ass'n of Realtors* has since administratively stayed its order pending Defendants' motion for stay pending appeal. But, in doing so it noted that
> [A]s the Court has explained . . . the law in this Circuit is clear: where a court concludes that an agency has exceeded its statutory authority, as this Court has done here . . . vacatur of the rule is the proper remedy in this Circuit. *See Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998). Based on this clear authority, courts in this Circuit do not restrict vacatur only to those plaintiffs before the Court. *See, e.g.*, *O.A. v. Trump*, 404 F. Supp. 3d 109, 152-53 (D.D.C. 2019). Indeed, the government has been unable to point to a single case in which a court in this Circuit has done so.

*Alabama Ass'n of Realtors*, No. 1:20-cv-03337-DLF, Minute Order (May 6, 2021).

3

vacatur was a proper remedy. ECF #33 at 1-2, fn. 1. Second, Plaintiffs' view is that the Court's judgment necessarily set aside the moratorium as to all affected parties. *See* ECF #57 at 3 . Obviously, this Court can interpret its own order, but there is nothing on the face of it that suggests it only applies to Plaintiffs—indeed, it strongly suggests the opposite. *See, e.g.*, ECF #55. at 29, 30. Defendants contend otherwise, but their argument proceeds from a flawed premise—that even in a case in which a court has held an agency lacks statutory authority, the remedy should be confined to the plaintiffs. But that position is incorrect, and it ignores the many cases Plaintiffs' cited for the proposition that universal vacatur is the "ordinary remedy" under section 706. What prompted Plaintiffs' motion was the Defendants' decision to treat the Court's judgment more narrowly than it logically applies. That is a "new fact" that would qualify as grounds to clarify or amend its judgment under Rule 59(e). But the Court has the discretion to do so in any event.

Proceeding on the same flawed premise, Defendants claim Plaintiffs lack standing to seek universal vacatur. But this position confuses standing to sue with the proper scope of the remedy that follows from a judgment in a plaintiff's favor. The cases Defendants themselves cite make clear that remedies should address "the *inadequacy* that produced the injury in fact that the plaintiff has established." *Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018) (citation omitted) (emphasis added). Here, the "inadequacy" that produced Plaintiffs' injury was the fact that the CDC *lacks the statutory authority to ban evictions*. If it had been something more limited—for example, the application of the moratorium to certain of Plaintiffs' tenants who did not meet its requirements— then the situation would be different. But here, the Court concluded—properly and, now, consistently with two other district courts and a panel of the Sixth Circuit—that the CDC's Order was ultra vires. That was necessarily a facial ruling and the proper remedy is to vacate the moratorium at its source, not its destination.

Finally, Defendants contend that equitable principles prevent vacatur beyond the Plaintiffs. But this defies the plain language of APA section 706, the purpose of the APA, and the many cases that have held that vacatur is the "ordinary remedy" when agency action is held unlawful.

**ARGUMENT**

**I.     Plaintiffs Have Met The Requirements of Rule 59(e)**

As Plaintiffs explained in their motion to clarify or amend, ECF #57 at 4, "[t]he Federal Rules grant district courts broad discretion to 'alter or amend a judgment' or to grant 'relief from a judgment or order.'" *Singh Mgmt. Co., LLC v. Singh Dev. Co., Inc.*, 774 Fed. App'x 921, 925 (6th Cir. 2019) (citing rules 59(e) and 60(a) and (b)). This includes the discretion to clarify judgments. *See id*. In particular, Rule 59(e) allows courts to reconsider or clarify "matters properly encompassed in a decision on the merits." *Banister v. Davis*, 140 S.Ct. 1698, 1703 (2020). *See also Rowe v. Reg.*, No. 1:07-CV-20, 2008 WL 2009186, at *24 (E.D. Tenn. May 8, 2008) (Federal courts have "inherent authority and discretion to fashion an appropriate remedy…"); Power and Discretion of Court, 11 Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Civ. § 2803 (3d ed. 2012) (same).

The question Plaintiffs' motion raises is whether the Court's March 12 decision on the merits set aside the CDC's eviction moratorium as to all affected parties or only to the Plaintiffs. Plaintiffs believe the Court's ruling necessarily vacated the CDC's Orders as to everyone, but that question was not at issue until the Defendants' interpreted the Court's ruling to apply only the Plaintiffs. While it is true that the Defendants argued against nationwide relief in their response to Plaintiffs' motion for preliminary injunction, *see,* ECF #23 at 36, and Plaintiffs argued to the contrary in their reply, *see* ECF #33 at 14-20, the issue was not litigated beyond that brief exchange in the preliminary injunction briefs. And it did not come up again when the Court converted that

5

motion into one on the merits. Thus, the issue was not litigated in any meaningful way and the Court did not specifically address it in the March 12 Order. The scope of the Court's judgment is thus an appropriate issue for a motion to clarify or amend. *See Singh Mgmt. Co.,* 774 Fed. App'x at 925 (holding that courts have the authority to clarify judgments); *Gautreaux v. Chicago Hous. Auth.*, 178 F.3d 951, 958 (7th Cir. 1999) (same). None of the cases Defendants cite suggest otherwise. *See Hines v. Comm'r of Soc. Sec.*, 414 F. Supp. 3d 1080, 1081 (S.D. Ohio 2019) (denying motion for relief under Rule 59(e) where it was premised on a disagreement with the Court's application of the law to the facts); *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (reversing district court's conclusion that Rule 59(e) motion was inappropriate because the circumstances were such that the issue raised in the motion could not have been addressed previously); *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (denying motion under Rule 59(e) because the alleged new evidence was evidence the movant itself created after judgment).

## II. Plaintiffs Have Standing to Seek Universal Vacatur

Defendants face a serious hurdle in claiming that Plaintiffs' lack standing to seek universal (or district-wide) vacatur: If they are correct, then a large number of cases have been wrongly decided—indeed, have missed a rather obvious infirmity in their remedies—for a long time. That would include many cases in the D.C. Circuit that have held universal vacatur is the ordinary result when agency action is found unlawful. *See, e.g.*, *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); *Ill. Pub. Telecomms. Ass'n v. FCC*, 123 F.3d 693, 693 (D.C. Cir. 1997); *O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019). The Ninth Circuit follows the same rule. *See, e.g.*, *Empire Health Found. ex rel. Valley Hosp. Med. Ctr. v. Azar*, 958 F.3d 873, 886 (9th Cir. 2020) ("[W]hen a reviewing court determines that agency regulations are unlawful,

the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.") (internal quotation marks omitted).

It would also include many cases in which courts did not specifically discuss the breadth of the remedy, but simply vacated agency action beyond the parties in the case. *See, e.g.*, *DHS v. Regents of the Univ. of Cal.*, ––– U.S. ––––, 140 S. Ct. 1891, 1901, 207 L.Ed.2d 353 (2020) (holding that DHS's rescission of the Deferred Action for Childhood Arrivals program "must be vacated" due to the agency's violation of the APA); *Tennessee Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018) ("If an agency attempts to issue a legislative rule without abiding by the APA's procedural requirements, the rule is invalid."); *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 877-78 (8th Cir. 2013) (vacating an EPA rule as procedurally invalid and a separate EPA rule as in excess of statutory authority, and signaling in its analysis that the decision had implications generally for "regulated entities"); *H & H Tire Co. v. U.S. Dep't of Transp.*, 471 F.2d 350, 355-56 (7th Cir. 1972) ("When an administrative decision is made without consideration of relevant factors it must be set aside.") (internal quotation marks omitted); *State of N. J., Dep't of Env't Prot. v. U.S. Env't Prot. Agency*, 626 F.2d 1038, 1050 (D.C. Cir. 1980) (setting aside agency action after finding a notice-and-comment violation and remanding the record to the agency); *U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 210 (5th Cir. 1979) (setting aside an EPA rule because of procedural violations and remanding to the agency for it to "repromulgate" the rule with "proper public notice and opportunity for comment.").

According to Defendants' argument, all of these decisions are flawed because the courts failed to consider that "standing is not dispensed in gross." *See* ECF #60 at 3.

But Defendants are incorrect. They are conflating standing to assert a given claim with the proper scope of the remedy that follows from a ruling in a plaintiff's favor. Standing is focused on

7

whether the plaintiff is the proper party to assert a given claim. It accomplishes this by ensuring that the plaintiff is injured by the action of which he or she complains. *Bender v. Williamsport Area School District*, 475 U.S. 534 (1986). In this way, standing ensures that courts stay within the bounds of Article III, and resolve cases and controversies, rather than policy questions that are properly left to the political branches. *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017).

To be sure, plaintiffs must demonstrate standing for every claim to relief they assert. *Id*. at 1651 (holding that an intervenor seeking money damages for himself, separate from the damages plaintiffs sought, must have standing on his own). But that is a matter of showing that they have suffered concrete and particularized harm as a result of the legal inadequacy or infirmity at issue in each claim. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996). So long as they have done so—and Plaintiffs clearly have in this case—the scope of the remedy is determined by what is necessary to address that legal inadequacy. *See Missouri v. Jenkins*, 515 U.S. 70, 88, 89 (1995) ("[T]he nature of the . . . remedy is to be determined by the nature and scope of the constitutional violation" (citation and internal quotation marks omitted)).

*Lewis* is instructive on this point—not least, because it is the source of the two primary quotes on which Defendants rely: that "standing is not dispensed in gross," and that the remedy must "be limited to the inadequacy that produced the injury in fact that the plaintiff has established." In *Lewis*, several inmates filed a class action against the Arizona Department of Corrections claiming they were denied access to the courts because the defendants failed to provide them with facilities necessary to prepare and file legal papers. 518 U.S. at 346-47. The district court found for the plaintiffs and issued an injunction requiring sweeping changes to the prison system's legal facilities. *Id*. at 347-48. Although the Supreme Court agreed that the defendants

8

failed to provide adequate facilities, it disagreed with the breadth of the district court's injunction. *Id*. at 357. The issue, in the Court's view, was fundamentally one of standing and the extent of the legal infirmity that caused the plaintiffs' injury. As the Court put it,

> The actual-injury requirement would hardly serve the purpose we have described above—of preventing courts from undertaking tasks assigned to the political branches—if once a plaintiff demonstrated harm from *one particular inadequacy in government administration*, the court were authorized to remedy *all inadequacies in that administration. The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.*

*Id*. at 357 (emphasis added). The Court then examined the record for any inadequacies that actually caused a legally cognizable injury to the plaintiffs, and found only two. The defendants had failed to provide adequate services to illiterate and non-English speaking prisoners. *Id*. at 356. "Was that inadequacy widespread enough to justify systemwide relief?" *Id*. at 358. No, was the Court's answer, because the defendants could remedy the problem by providing these prisoners with targeted services. *Id*. at 360.

Simply put, the breadth of the remedy turns on the nature of the legal inadequacy that caused plaintiff's injury. Although the Court in *Lewis* concluded that the legal inadequacy was not systemwide and therefore the remedy should have been narrow, the principle of the case is clear: If the inadequacy *is* systemwide, then the remedy *is* properly systemwide as well. The Court's statement that "standing is not dispensed in gross," understood in context, reenforces the point. The Court made that statement in answer to the dissent's claim that any injury was sufficient to justify the sweeping injunction the district court ordered. As the Court stated, the dissent

> concludes, in gross, that [plaintiffs'] injuries are "sufficient to satisfy any constitutional [standing] concerns." But standing is not dispensed in gross. If the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review. That is of course not the law. As we have said, "[n]or does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the

9

necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."

*Id*. at 358 n. 6. The Court uses different terms throughout its discussion ("inadequacy," "administrative deficiency") but they all designate a *legal problem* that caused the plaintiff the harm of which he complains. And the conclusion that follows is that the remedy must be as narrow or broad as is necessary to address that legal problem.

Here, the legal problem of which Plaintiffs complained—and which caused their injury—was the CDC's lack of statutory authority to impose an eviction moratorium. Plaintiffs are not seeking to bootstrap a complaint about a singular "administrative deficiency" into standing to challenge a host of things they don't like. The claim on which they prevailed was a challenge to one indivisible problem: the CDC's lack of statutory authority. That was necessarily a "systemwide" legal problem, as it did not turn on anything unique to the Plaintiffs. Plaintiffs therefore had standing to seek a systemic remedy, which is to vacate the eviction moratorium across the board.

Plaintiffs' claim is akin to a facial challenge to a statute. In such cases, where the plaintiff shows that there is no set of facts to which the statute can lawfully be applied, the proper remedy is to strike it down on its face. *See, e.g.*, *City of Los Angeles, Calif. v. Patel,* 576 U.S. 409, 415 (2015) (allowing a facial challenge based on Fourth Amendment and striking down the offending law in its entirety); *Ohio v. Akron Ctr. for Reprod. Health*, 497 U.S. 502, 514 (1990) (explaining that "because appellees are making a facial challenge to a statute, they must show that 'no set of circumstances exists under which the Act would be valid'"). Here, the argument for universal vacatur is even stronger than that for a facial attack on a statute, because vacatur is what section 706 of the APA demands and what the Court's ruling naturally implies. *See, e.g.*, *Louisiana Public*

*Service Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act . . . unless and until Congress confers power upon it.").

The cases on which Defendants rely are not to the contrary. In *Gill v. Whitford*, the Court concluded that plaintiffs who were challenging a gerrymandering scheme on the grounds that it diluted votes had to show some devaluing of *their own* votes to maintain their claims. 138 S. Ct. 1916, 1934 (2018). Similarly, *Spokeo v. Robins* stands for the proposition that a named plaintiff in a class action must show injury to himself to possess standing rather than relying on injuries to members of the class. 136 S. Ct. 1540, 1550 (2016). Here, Plaintiffs have clearly shown an injury to themselves, and for the reasons stated above, that entitles them to seek universal vacatur in this case.

### III. The Court's Judgment Necessarily Vacated the Eviction Moratorium as to All Affected Parties, But the Court can Limit the Geographic Scope of Its Judgment

Universal vacatur is the "ordinary result" when agency action lacks statutory authority for the simple reason that it is a properly "systemwide" remedy to a "systemwide" problem. Since agencies lack any power to act without Congressional authorization, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000), and since the APA's purpose is to establish the principles and procedures by which agencies must act, *Chrysler Corp. v. Brown*, 441 U.S. 281, 313 (1979), it would be strange if a court were to declare that an agency can continue to enforce agency action that lacks statutory authority. A district court in the D.C. Circuit has made precisely this point:

> As a practical matter, . . . how could [a] [c]ourt vacate [a challenged] Rule with respect to the . . . plaintiffs in [a] case without vacating the Rule writ large? What would it mean to 'vacate' a rule as to some but not other members of the public? What would appear in the Code of Federal Regulations?"

*O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019). Indeed, if Defendants were correct, even when an agency violated notice and comment requirements, a rule would be vacated only as to the

11

parties who challenged it, and the agency would presumably not have to follow notice and comment procedures until every affected party in the nation sued in every circuit. But that result would make no sense. *See Capital Area Immigrants' Rights Coal. v. Trump*, 471 F. Supp.3d 25, 58-59 (D.D.C. 2020) (rejecting defendant's request to vacate rule that violated notice and comment requirements only as to plaintiffs). Universal vacatur is the proper remedy in a case such as this because it is the only remedy that makes sense. *See, e.g.*, *National Mining Assoc.*, 145 F.3d at 1409 (relying on Justice Blackman's concurrence in *Lujan v. National Wildlife Federation*, 497 U.S. 871, 913 (1990), for the principle that where the relevant agency action consists "of a rule of broad applicability" a prevailing plaintiff who was injured by the rule is entitled to "'programmatic' relief that affects the rights of parties not before the court."); *Cook County Illinois v. Wolf*, 2020 WL 6393005, at *3 (N.D.Ill., Nov. 2, 2020) (holding universal vacatur is the ordinary remedy under APA section 706 and discussing cases).

Defendants attempt to sidestep these common sense points, primarily by arguing against nationwide injunctions. But Plaintiffs are not now asking for a nationwide injunction, they are asking the Court to make clear that its declaration setting aside the eviction moratorium applies to all affected parties, at least within the Northern District of Ohio. A declaration under section 706 is a very different remedy from an injunction. *See, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course. If a less drastic remedy (such as partial or complete vacatur of [the agency's] deregulation decision) was sufficient to redress [the challengers'] injury, no recourse to the additional and extraordinary relief of an injunction was warranted."); *Powell v. McCormack*, 395 U.S. 486, 499 (1969) (observing that a declaratory judgment might be used as a predicate for further relief, but is not as strong a remedy as injunctive relief); *Capital Area*

12

*Immigrants' Rights Coal.*, 471 F. Supp.3d at 59 (distinguishing between a nationwide injunction and vacatur under section 706).

One important difference is that an defendant must follow an injunction under threat of contempt of court. *See, e.g.*, *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985) ("There is no question but that the passive remedy of a declaratory judgment is far less intrusive into state functions than injunctive relief that affirmatively commands specific future behavior under the threat of the court's contempt powers."). A declaratory judgment does not have the same effect. As a result, the Defendants are wrong in asserting that a declaration vacating the moratorium universally would prevent other courts from deciding differently. Other courts would be free to agree or disagree with this Court's decision, as other courts are always free to disagree with decisions that do not bind them.

As a result, the cases on which Defendants rely that involve the propriety of nationwide injunctions are inapposite. *See* ECF 60# at 5-8. To be sure, as Plaintiffs recognized in their opening brief, there may be prudential reasons for the Court to limit the scope of its declaration to the Northern District of Ohio. But whether this Court decides to do so, there are no circumstances in which the Court's judgment should apply only to the plaintiffs, for the reasons Plaintiffs have already stated. Indeed, the Sixth Circuit's decision in *Gun Owners of Am., Inc. v. Garland*, 992 F.3d 446 (6th Cir. 2021), supports Plaintiffs' interpretation of section 706. In discussing the proper scope of the district court's injunction, the Sixth Circuit stated, "we do not decide the scope of the injunction, except to say that the scope may not exceed the bounds of the four states within the Sixth Circuit's jurisdiction and, of course, encompasses the parties themselves." *Id*. at 474. The Court's recognition that an injunction could apply within the Sixth Circuit in addition to the parties themselves would have made no sense if it agreed with the Defendants' view that a remedy under

APA section 706 must be limited to the plaintiffs alone. *Cf. Mayor & City Council of Baltimore v. Azar*, No. 19- 1103, 2020 WL 1873947, at *3–4 (D. Md. Apr. 15, 2020) (concluding that vacatur should not apply nationally, but applying it to all affected parties within the State of Maryland).

Finally, Defendants contend that Plaintiff's argument disrupts traditional principles of equity. But as Plaintiffs pointed out in their opening brief, this ignores fact that Congress replaced traditional principles of equity when it passed the APA, at least with respect to the scope of relief under section 706. Indeed, the Defendants' argument, if accepted, would overturn decades of cases vacating agency action and defy the structure and purpose of the APA.

## CONCLUSION

For the forgoing reasons, this Court should clarify that its March 10 Opinion and Order vacated the CDC's eviction moratorium nationally, or, in the alternative, with respect to the Plaintiffs and affected parties within the Northern District of Ohio.

DATED: May 7, 2021

Respectfully submitted:

*/s/* Steven M. Simpson
STEVEN M. SIMPSON*
DC Bar No. 462553
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 610
Arlington, VA, 22201
Tel: (202) 888-6881
SSimpson@pacificlegal.org

MAURICE A. THOMPSON
(0078548)
1851 Center for Constitutional Law
122 E Main St.
Columbus, OH 43215
Tel: (614) 340-9817
Mthompson@ohioconstitution.org

LUKE A. WAKE*
DC Bar No. 1009181
ETHAN W. BLEVINS*
Washington State Bar No. 48219
HANNAH SELLS MARCLEY*
Washington State Bar No. 52692
Pacific Legal Foundation
930 G Street
Sacramento CA 95814
Tel: (916) 419-7111
Fax: (916) 419-7747
LWake@pacificlegal.org
EBlevins@pacifclegal.org
HMarcley@pacificlegal.org

*Pro Hac Vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 7, 2021, I electronically filed the foregoing document with the Clerk of the Court via the CM/ECF system, which will cause a copy to be served upon counsel of record.

                                                    By /s/ *STEVEN M. SIMPSON*
                                                          STEVEN M. SIMPSON